(C. D. 1507)

HUDSON SHIPPING COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 12, 1953)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Harold L. Grossman*, special attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: This is a protest against the collector's assessment of additional duty of 10 per centum ad valorem under section 304 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, on certain plaster-of-paris fireplaces imported from Canada, on the ground that they were not legally marked. It is claimed in the protest (1) that the merchandise was properly marked, and (2) that the assessment of additional duty was invalid, illegal, and void for the reason that an insufficient number of packages was desig-

nated for examination as required by section 499 of said tariff act, as amended, *supra*. No reference to the latter claim is made in plaintiff's briefs.

The pertinent provisions of section 304 of the Tariff Act of 1930, as amended by Customs Administrative Act of 1938, are as follows:

SEC. 304. MARKING OF IMPORTED ARTICLES AND CONTAINERS.

(a) MARKING OF ARTICLES.—Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. The Secretary of the Treasury may by regulations—

\* \* \* \* \* \* \*

(3) Authorize the exception of any article from the requirements of marking if—

\* \* \* \* \* \* \*

(D) The marking of a container of such article will reasonably indicate the origin of such article;

\* \* \* \* \* \* \*

(b) MARKING OF CONTAINERS.—Whenever an article is excepted under subdivision (3) of subsection (a) of this section from the requirements of marking, the immediate container, if any, of such article, or such other container or containers of such article as may be prescribed by the Secretary of the Treasury, shall be marked in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of such article, subject to all provisions of this section, including the same exceptions as are applicable to articles under subdivision (3) of subsection (a). \* \* \*

(c) ADDITIONAL DUTIES FOR FAILURE TO MARK.—If at the time of importation any article (or its container, as provided in subsection (b) hereof) is not marked in accordance with the requirements of this section, and if such article is not exported or destroyed or the article (or its container, as provided in subsection (b) hereof) marked after importation in accordance with the requirements of this section (such exportation, destruction, or marking to be accomplished under customs supervision prior to the liquidation of the entry covering the article, and to be allowed whether or not the article has remained in continuous customs custody), there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause. \* \* \*

Section 11.10 (*a*), Customs Regulations of 1943, issued under the authority of section 304 (a), *supra*, provides:

11.10. Exceptions to marking requirements.—(*a*) Articles coming within the classes of merchandise specified in section 304 (a) (3), Tariff Act of 1930, as amended, are hereby exempt from the requirement of marking. The marking of the container of an article shall be regarded as reasonably indicating the origin of such article within the meaning of section 304 (a) (3) (D), Tariff Act of 1930, as amended, if the container is sealed and the article is usually sold to the ultimate purchaser without the container being opened to make the article readily available for inspection. \* \* \*

The shipment involved herein consisted of 123 cartons containing artificial fireplaces. It was stipulated at the trial that only one carton was designated for examination at the appraiser's stores and that the merchandise was shipped to the ultimate consumer as imported without being opened.

Plaintiff called Irving I. Plotkin, general manager of Windsor Furniture Corp., the importer of the merchandise in question. He stated that the merchandise consisted of fireplaces made of plaster of paris on an iron frame. The front surface is smooth, he stated, and is lacquered and colored to present a fine appearance, while the back consists of a hollow area with roughened surfaces of plaster. In his opinion, the fireplaces could not be marked on the back because of the rough surface nor on the front because it would spoil the appearance. He added that nothing could be attached to the articles because the material, plaster of paris, would break off.

Mr. Plotkin described the cartons in which the fireplaces were packed as follows:

These fireplaces were very heavy, and required a wooden skid on the bottom, and the fireplace would then be placed on a material for cushioning purposes, to avoid any shock in shipment. Then paper would be placed over the fireplace and over the paper a very heavy carton, which was more or less shaped to the shape of the fireplace. * * *

Q. Was there also some kind of steel band around the carton?—A. Yes, running around the top to the bottom and then back, with two steel bands to hold the fireplace carton to the skid and to hold the fireplace rigidly in place. At each corner of the top of the carton where the band would pass around would be an extra little folder of cardboard, so that the band would not press into the carton itself.

*      *      *      *      *      *      *

Q. Did the cartons completely cover and conceal the fireplaces contained therein?—A. Oh, absolutely. You couldn't see anything inside.

The witness testified that the fireplaces packed in such cartons were imported in carload lots, and, when they arrived, the importer relabeled them and shipped them to its customers without opening the cartons. He personally examined all the cartons in this shipment except the one sent to the appraiser's stores. This was done at the freight terminal when he went with a representative of the trucking company to separate the different models and put on the proper labels for shipment in accordance with the orders he had on hand. He stated that the cartons were marked "Made in Canada" in black print in capital letters, and on the top "Fragile," and then in crayon the name of the individual fireplace.

William Mosberg, general manager of Big Ben Trucking Co., testified that he had personally had charge of the unloading of this merchandise from the importing car. He examined the various cartons and found that all of them were marked with the words

# 119

"Made in. Canada" and with the word "Fragile." The cartons were sealed so that the merchandise could not be seen.

The Government called James J. Gilio, customs examiner's aide, who testified that he had personally inspected the merchandise which was sent to the public store for examination. He stated that after the carton was opened by a packer and he was notified that the merchandise was ready for examination, he "examined this particular carton."

Q. Did you examine this fireplace very carefully?—A. I did, yes, sir.

Q. You went over it thoroughly?—A. I did.

Q. Did you find any marks thereon indicating the country of origin?—A. Not on the fireplace, no.

\* \* \* \* \* \* \*

Q. In your opinion would you say there had been at no time any marking on this fireplace?—A. No doubt at all, no marking at all.

Q. And you so state?—A. That is right. It was taken right out of the carton.

An examination of the official papers indicates that customs officials found the merchandise not legally marked, for which reason additional duty was assessed thereon.

Plaintiff claims that whether or not the fireplaces themselves were marked to show the country of origin, the sealed containers were properly marked. Consequently, it is contended, the merchandise falls within an authorized exception to the marking rule found. in section 304 (a) (3) (D) of the Tariff Act of 1930, as amended, and section 11.10 (a) of the Customs Regulations of 1943, promulgated by the Secretary of the Treasury pursuant to authority vested in him by said section 304 (a).

The evidence establishes that the cartons were marked "Made in Canada," although the articles themselves apparently were not. Both Mr. Plotkin and Mr. Mosberg examined all but one of the cartons, and, according to their uncontradicted testimony, found the words "Made in Canada" printed upon them in large letters. On the other hand, the examiner's aide inspected the fireplace contained in one carton. He testified that he found no marking upon the fireplace, but made no statement as to whether or not there was any marking on the carton. It is to be noted in this connection that the report as to the marking of the merchandise in customs custody (on the back of customs Form 4647) states:

*Fire Place* stamped with opaque ink.  [Italics supplied.]

Under section 304 (a) (3) (D), *supra*, the Secretary of the Treasury may make regulations exempting an article from the marking requirements provided the marking of the container will reasonably indicate to the ultimate purchaser the country of origin. Under section 11.10 (a), Customs Regulations of 1943, the exemption is

made applicable where "the container is sealed and the article is usually sold to the ultimate purchaser without the container being opened to make the article readily available for inspection."

In the instant case, it was stipulated that the merchandise was shipped to the ultimate consumer in its condition as imported. Furthermore, Mr. Plotkin testified that the merchandise was imported in carload lots and had already been sold to various individual consumers in the United States. Upon arrival in this country, the importer did not touch the cartons, except to relabel them with the new shipping directions. The cartons were sealed and completely covered the merchandise inside. No one examined the fireplaces except the ultimate consumers.

It is clear, therefore, that the merchandise falls squarely within the exception provided for in section 11.10 (*a*), Customs Regulations of 1943. Since the cartons were properly marked, we hold that the merchandise was legally marked at the time of importation and is not subject to additional duty at the rate of 10 per centum ad valorem under section 304 (c) of the Tariff Act of 1930, as amended. In view of this holding, it is unnecessary to consider other claims made by the plaintiff in its brief or in the protest.

The protest is sustained as to the claim that the merchandise was legally marked at the time of importation. In all other respects it is overruled. Judgment will be rendered accordingly.