(C.D. 4126)

CARLSON FURNITURE INDUSTRIES
JAMES G. WILEY & CO. } v. UNITED STATES

United States Customs Court, Third Division

(Decided November 13, 1970)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before RICHARDSON, LANDIS, AND ROSENSTEIN, Judges

RICHARDSON, Judge: The merchandise of this protest, consisting of parts of chairs imported in 320 cartons at the port of Los Angeles, California, from Japan, was assessed upon liquidation with 10 percent additional duties pursuant to 19 U.S.C.A., section 1304 (section 304, Tariff Act of 1930, as amended by the Customs Administrative Act of 1938). In their protest plaintiffs claim, among other things, that marking duties were improperly assessed against this importation in that certain of the imported chair parts, designated as finished, were marked to indicate the country of origin, and that certain other chair parts of this importation, designated as unfinished, were exempt from the marking requirements of section 1304 pursuant to section 11.8(e) of the Customs Regulations.

At the trial Mrs. Marjorie L. Wieder, called as a witness on plaintiffs' behalf, testified that she is an employee of the United States Customs, that in 1967 she was an aide to Morris Assami, senior import specialist, in which capacity she handled furniture and was involved in the inspection of furniture to ascertain compliance with the marking requirements. She testified that although she did not personally examine the merchandise covered by the involved entry she caused one of the unfinished chair parts of this entry to be examined. Based

upon the examination of such chair part she stated that she sent a marking notice on a customs form to the importer Carlson Furniture Industries, one of the plaintiffs herein, to the effect that the merchandise had not been marked in accordance with law.

The official papers, which were received in evidence at the trial, contain no copy of the aforementioned marking notice. However, the entry contains the following data in the first column under the heading MARKS & NUMBERS OF PACKAGES COUNTRY OF ORIGIN OF MERCHANDISE:

MARKS & NUMBER OF PACKAGES COUNTRY
OF ORIGIN OF MERCHANDISE

(1)

| | |
|---|---|
| CARLSON | |
| FURNITURE | |
| INC. | |
| PWP CFI# | |
| 2401U/5L | |
| Los Angeles | |
| Made in | |
| Japan | |
| c/#2469/2568 | 100 ctn |
| ditto | |
| c/#2569/2648 | 80 carton |
| ditto2305U/5L | |
| C/#2649/2688 | 40 ctn |
| ditto2305F/5L | |
| C/#2689/2748 | 60 ctn |
| ditto2309U/5L | |
| C/#2749/2768 | 20 ctn |
| ditto | |
| 2309F/5L | |
| ditto | |
| c/#2769/2788 | 20 ctn |

The testimony given by the witness Wieder related to chair part designated 2401U/5L on the entry as noted above.

Norman Rose, also called as a witness on plaintiff's behalf, testified that in July, 1967, he was employed by plaintiff Carlson Furniture Industries as general manager, that the business of Carlson Furniture is the importing, assembling, finishing and selling of principally wooden furniture, and that he was familiar with the merchandise of the involved importation, having been instrumental in setting up the

line of merchandise and the allocation of numbers to the particular styles of chairs involved. He stated that the number 2401U described as unfinished side chair, the number 2410U an unfinished stub arm chair, the number 2305U an unfinished mate's or side chair, the number 2309U an unfinished mate's or side chair, the number 2305F a finished mate's or side chair, and the number 2309F a finished mate's or side chair. The witness explained that the suffix U after a number indicated that the chair designated by such number was unfinished in terms of surface finishing, and that the suffix F after a number indicated that the chair designated by such number had been surface finished.

Mr. Rose admitted that the marking notice had been received by Carlson Furniture. He testified that upon receipt of the notice, he examined the chairs and found that the finished chairs were marked with the word "Japan", and that the unfinished chairs were not marked with the country of origin. The reason the unfinished chairs were not so marked, according to Mr. Rose, was due to a ruling of the Customs Bureau, obtained with his participation, exempting the unfinished chairs from the marking requirements.

Exhibits 1 and 2 in evidence are rulings of the Customs Bureau relating to unassembled furniture imported by Carlson Furniture Industries into the United States. Exhibit 1, addressed to the collector of customs at the port of New York from the deputy commissioner of customs under date of October 24, 1963, states:

Dear Mr. Kelly:

Reference is made to a letter received from Barnes, Richardson and Colburn, dated October 14, 1963, a copy of which was sent to Mr. Frank Regan of the Restricted Merchandise Division, requesting a ruling on the marking requirements of wooden chairs imported in a knocked-down condition.

An application for exception from individual marking is made on behalf of Carlson Furniture Industries, Inc., manufacturers of captains' and mates' chairs. All of the wooden components necessary to complete the manufacture of these particular types of chairs, such as seats, backs, legs, spindles, and spreaders, are imported, and the individual parts may be stained or unstained, finished or unfinished.

Although the chair parts are formed at the point of importation the manufacturing process has scarcely begun. The parts must be sorted, combined and assembled by means of glue and steel pins. Some chairs are upholstered. Legs must be leveled, cut, and metal fittings secured. The finished products must be sanded, stained, rubbed, lacquered and polished either wholly or in part, and then individually wrapped and cartoned. These processes involve much time and labor and result in a totally new and finished product within the purview of the Gibson-Thomsen-decision.

In view of these facts the Bureau has determined that the importer of the chair parts is the "ultimate purchaser" as defined in section 11.8(e), Customs Regulations (see footnote 6a), and if the importer receives the parts in unopened containers legibly and conspicuously marked with the name of the country or origin, the component parts will be excepted from marking under section 304(a)(3)(D), Tariff Act of 1930, as amended.

Sincerely yours,

(Signed)  B. H. Flinn
B. H. FLINN
Deputy Commissioner

And exhibit 2, directed to all collectors of customs from the Commissioner of Customs under date of August 27, 1964, states:

1. PURPOSE

To state the country of origin marking requirements applicable to wooden chairs imported in a knocked-down condition.

2. BACKGROUND

In C.I.E. 2092/63, October 28, 1963, the Bureau ruled that the principle of the decision in the case of the *United States* v. *Gibson-Thomsen Co., Inc.* (C.A.D. 98) was applicable to the process of assembling wooden chairs imported in a knocked-down condition, the individual parts being stained or unstained, finished or unfinished.

The Bureau is of the opinion that the mere assembly of wooden chair parts into chairs in the United States, when the chair parts are imported in a finished condition, does not result in the manufacture of a new or different article, or a substantial transformation of the imported parts, and the assembler of the chairs is not to be considered the "ultimate purchaser" of the imported parts within the meaning of section 304(a) of the tariff act.

3. ACTION

When wooden chairs are imported in a knocked-down condition, and the wooden parts are finished, the chairs must be legibly and conspicuously marked to indicate the country of origin. The marking need appear on only one of the parts, such as the bottom of the seats. When wooden chairs are imported in an unfinished condition, and are to be sanded, stained, lacquered, etc., in this country, the principle of the decisions in the case of *United States* v. *Gibson-Thomsen Co., Inc.* shall be applicable.

4. EFFECTIVE DATE

December 1, 1964.
File: EV 363.2 K

(Signed)  LESTER D. JOHNSON
*Commissioner of Customs*

There was also put into evidence by plaintiffs as exhibit 3 a list of the manufacturing steps taken by Carlson Furniture upon receipt

of the imported merchandise in transforming it into completed chairs. Although there is no direct testimony in the record on the subject, it would appear, according to step No. 2 of exhibit 3, that the immediate containers of the imported chair parts are wooden cases that are received by Carlson Furniture *unopened*. Step No. 2 of exhibit 3 states that "Each case must be carefully opened so as not to damage the merchandise." And it also appears from an examination of exhibit 3 that, among other things, American made materials, parts and tools are used by Carlson Furniture in the conversion of the imported chair parts into completed chairs. Mr. Rose testified that exhibit 3 was compiled for the purpose of submission to the Customs Bureau in connection with the application for exemption of the involved merchandise from the marking requirements.

Defendent, who did not call any witnesses, put into evidence as collective exhibit A an affidavit of the witness Rose to which is attached a photostatic copy of exhibit 3, with a view toward impeaching testimony given in this case by Mr. Rose on the subject of whether a copy of exhibit 3 accompanied each entry filed by Carlson Furniture. The affidavit described in exhibit A explains the relationship between Carlson Furniture and Pacific Wood Products Co., and was apparently given to the collector of customs at Los Angeles, according to an attached transmission letter authored by the plaintiff James G. Wiley Co., to induce the collector to cancel a Marketing Notice pertaining to an entry of merchandise not here involved. The trial court was of the opinion that exhibit A did not impeach the testimony given in this case by the witness Rose.

Section 1304 reads in relevant part as follows:

§ 1304. Marking of imported articles and containers—Marking of articles

(a) Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. The Secretary of the Treasury may by regulations—

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(3) Authorize the exception of any article from the requirements of marking if—

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(D) The marking of a container of such article will reasonably indicate the origin of such article;

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

## Marking of containers

(b) Whenever an article is excepted under subdivision (3) of subsection (a) of this section from the requirements of marking, the immediate container, if any, of such article, or such other container or containers of such article as may be prescribed by the Secretary of the Treasury, shall be marked in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of such article, subject to all provisions of this section, including the same exceptions as are applicable to articles under subdivision (3) of subsection (a) of this section. If articles are excepted from marking requirements under clause (F), (G), or (H) of subdivision (3) of subsection (a) of this section, their usual containers shall not be subject to the marking requirements of this section. Usual containers in use as such at the time of importation shall in no case be required to be marked to show the country of their own origin.

## Additional duties for failure to mark

(c) If at the time of importation any article (or its container, as provided in subsection (b) of this section) is not marked in accordance with the requirements of this section, and if such article is not exported or destroyed or the article (or its container, as provided in subsection (b) of this section) marked after importation in accordance with the requirements of this section (such exportation, destruction, or marking to be accomplished under customs supervision prior to the liquidation of the entry covering the article, and to be allowed whether or not the article has remained in continuous customs custody), there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause. Such duty shall be levied, collected, and paid in addition to any other duty imposed by law and whether or not the article is exempt from the payment of ordinary customs duties. The compensation and expenses of customs officers and employees assigned to supervise the exportation, destruction, or marking to exempt articles from the application of the duty provided for in this subsection shall be reimbursed to the Government by the importer.

And section 11.10(a) of the Customs Regulations reads in part:

## 11.10 Exceptions to marking requirements

(a) Articles within any specification in section 304(a)(3), Tariff Act of 1930, as amended, are hereby excepted from the requirement of marking. The marking of the container of an article will reasonably indicate the origin of such article within the meaning of section 304(a)(3)(D) if the article is imported (or repacked under section 562, Tariff Act of 1930, as amended) in a container which will reach the ultimate purchaser in the United States unopened. * * *

Also, section 11.8(e) of the Customs Regulations, to which reference is made in the protest as the basis for the claimed exemption of the unfinished chair parts from the requirements of the marking statute, reads:

> (e) If an imported article is to be used in the United States in the manufacture of an article having a name, character, or use differing from that of the imported article, the principle of the decision in the case of *United States* v. *Gibson-Thomsen Co., Inc.* (C.A.D. 98) will apply to such imported article. Under this principle, the manufacturer or processor in the United States who will convert or combine the imported article into the different article will be considered the "ultimate purchaser" of the imported article within the contemplation of section 304(a), Tariff Act of 1930, as amended.

In *United States* v. *Gibson-Thomsen Co., Inc.*, 27 CCPA 267, C.A.D. 98 (1940), the imported merchandise was toothbrush handles and brush blocks with the country of origin marking being in such a position that when bristles were inserted therein in the manufacture of toothbrushes and hairbrushes in this country the marking would be obscured. The collector refused to permit delivery of the handles and blocks to the importer until they were marked with the country of origin in a conspicuous place which would survive the manufacturing process, the collector declining to treat the importer as the ultimate purchaser of the imported articles. The courts sustained the importer's protest against the action taken by the collector under the marking statute. Our appeals court stated in that case, among other things (page 273):

> It is clear from the record that the involved articles . . . are so processed in the United States that each loses its identity in a tariff sense and becomes an integral part of a new article having a new name, character, and use. We are of opinion, therefore, that, at the time of their importation, the involved articles were marked "in such manner as to indicate to" the "ultimate purchaser in the United States" the manufacturer of toothbrushes and hairbrushes—the country of their origin—Japan.

No issue of exemption from marking was involved in the *Gibson-Thomsen* case, however, as plaintiffs appear to believe, judging from language employed in the protest. Exemption from marking comes into the picture perforce of section 1304(a)(3)(D) and section 11.10 (a) of the Customs Regulations, hereinbefore referred to, to the extent of effecting a transfer of marking of country of origin from the imported article *per se* to a container in which it is imported. The collector at the port of entry was privy, via the C.I.E. dissemination of the Bureau of Customs rulings received in evidence herein as exhibits 1 and 2, to knowledge as to how plaintiff Carlson Furniture used the merchandise imported in the containers at bar. And the evidence at bar indicates that these containers were received by plaintiff Carlson Furniture unopened and with the marking "Made in Japan"

on them. Such a state of facts would, in our opinion, constitute compliance with the statutory marking requirements were the issue before the court a matter of the exemption of the imported articles *per se* from the marking requirements. *Cf. Hudson Shipping Company, Inc. v. United States*, 30 Cust. Ct. 116, C.D. 1507 (1953).

The issue in this case as we see it is whether plaintiff Carlson Furniture is the "ultimate purchaser" of the imported articles at bar, so that the marking of the country of origin on the containers in which such articles were imported would be deemed sufficient compliance with the statutory marking requirements. In our opinion, plaintiff Carlson Furniture is the "ultimate purchaser" of the imported chair parts at bar.

The imported articles are not chairs in unassembled or knocked-down condition. They are at best the wooden parts which go into the making of chairs. Under the evidence at bar it is not contemplated that these imported chair parts are to be sold and passed on by plaintiff Carlson Furniture in the condition in which they are imported. Most of the involved parts were not surface finished. But even if all of the chair parts at bar were surface finished at the time of importation, it is clear from the evidence that additional work would have had to be performed on them and materials added to them to create with them a functional article of commerce. And plaintiff Carlson Furniture, in every instance with respect to the imported articles, had to assemble and fit all the wooden parts together and glue them, had to steel pin all the key joints, and had to cut all the legs to length and level them. Also, in some instances not determinable at the time of importation, the chairs had to be upholstered and their legs fitted with various types of glides and casters. We regard these operations as being substantial in nature, and more than the mere assembly of parts together. And the end result of the activities performed on the imported articles by the plaintiff Carlson Furniture is the transformation of parts into a functional whole—giving rise to a new and different article within the principle of the *Gibson-Thomsen* case.

It follows from the foregoing that the markings of country of origin on the containers in which the chair parts were imported was a sufficient compliance with the statutory marking requirements as to plaintiff Carlson Furniture, the ultimate purchaser of the chair parts. Consequently, it becomes unnecessary for us to determine at this point whether the evidence is sufficient to establish that the finished chair parts were separately marked with country of origin. And for the reasons stated, assessment of additional duties against the involved merchandise pursuant to section 1304 was improper. The protest is, therefore, sustained as to this claim, and overruled as to other claims.

Judgment will be entered accordingly.